## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

JESSICA MOBLEY,                                               Case No.

              Plaintiff,

    v.

NATIONAL PRESTO INDUSTIRIES, INC.

              Defendant.

---

### COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, by and through her attorneys, **JOHNSON BECKER, PLLC**, upon information and belief, at all times hereinafter mentioned, allege as follows:

### NATURE OF THE CASE

1.  Defendant National Prestos Industries, Inc. ("Presto") designs, manufactures, markets, imports, distributes and sells a wide-range of consumer kitchen products, including the subject "Presto 6-quart Programmable Pressure Cooker," that is at issue in this case.

2.  Defendant touts the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

3.  Specifically, said defects manifest themselves when, despite Defendant's statements, the lid of the pressure cooker is removable with built-up pressure, heat and steam still

---

[1] *See*, e.g. Presto 6-quart Programmable Pressure Cooker Owner's manual, pg. 2. ("There are 8 built-in safety features, including a cover locking system that allows pressure to build only when the cover is closed. It also prevents the cover from being opened until pressure is safely reduced.."). A copy of the Owner's manual is attached hereto as "Exhibit A".

1

inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, its families and other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

4. Defendant knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

5. Defendant ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

6. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF JESSICA MOBLEY

7. Plaintiff Jessica Mobley is a resident and citizen of the city of Mount Clemens, County of Macomb, State of Michigan, and was born on November 25, 1988.

8. On or about December 5, 2022, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the Pressure Cooker's lid being able to be rotated and opened while the Pressure Cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing its scalding hot contents to be forcefully ejected from the Pressure

Cooker and onto Plaintiff. The incident occurred as a result of the failure of the Pressure Cooker's supposed "Built-In Safety Features," which purport to keep the consumer safe while using the Pressure Cooker. In addition, the incident occurred as the result of Defendant's failure to redesign the Pressure Cooker, despite the existence of economical, safer alternative designs.

## DEFENDANT NATIONAL PRESTO INDUSTRIES, INC.,

9. Defendant designs, manufactures, markets, imports, distributes and sell a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

10. Defendant Presto is a Wisconsin corporation with is principal place of business at 3925 North Hasting, Eau Claire, WI 54703.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that Defendant is a resident of this district.

## FACTUAL BACKGROUND

13. Defendant is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cooker at issue in this litigation.

14. Defendant warrants, markets, advertises and sells its pressure cookers as saving "time, energy, and money," allowing consumers to cook meals "70% faster than ordinary cooking methods."[2]

---

[2] *See,* e.g. https://www.gopresto.com/product/presto-electric-pressure-cooker-plus-02141 (last accessed November 25, 2025)

15.     Defendant claims that the Presto 6-quart Programmable Pressure Cooker comes equipped with "[e]ight built-in safety features including a cover locking system that allows pressure to build *only when the cover is securely closed and prevents the cover from being opened* until pressure is safely reduced."[3]

16.     To further propagate its message, Defendant has, and continues to utilize numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers. For example, the following can be found on Presto's website and YouTube:

   a. "Pressure is completely reduced when the blue air vent cover lock has dropped"[4]

   b. "The blue cover lock indicator shows when there is pressure inside the cooker and prevents the cover from being opened until pressure is sagely reduced."[5]

17.     According to the Owner's Manual accompanying each individual unit sold, the pressure cookers feature a "cover locking system"[6] which purportedly keeps the lid from the opening while under pressure.

18.     By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

19.     Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by the Defendant.

---

[3] *Id.*
[4] https://www.gopresto.com/videos/how-to-cook-with-the-presto-electric-pressure-cooker-plus (3:47 – 3:51) (last accessed November 25, 2025)
[5] https://www.youtube.com/watch?v=iFtg66qQFkE&feature=emb_rel_end (1:06 – 1:18) (last accessed November 25, 2025)
[6] *See*, Presto 6-quart Programmable Pressure Cooker Owner's manual, pg. 2.

20. However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendant in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

21. Defendant's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

22. Further, Defendant's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

23. Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

24. Defendant knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant continues ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers.

25. As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

26. Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendant's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY - DESIGN DEFECT

27. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

28. Defendant is the manufacturer, seller, distributor, marketer, and supplier of the subject Pressure Cookers, which was negligently designed.

29. Defendant failed to exercise reasonable care in designing, developing, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, and promoting its Pressure Cookers, which were defective and presented an unreasonable risk of harm to consumers, such as the Plaintiff.

30. As a result, the subject Pressure Cookers, including Plaintiff's Pressure Cooker, contain defects in their design which renders them unreasonably dangerous to consumers, such as the Plaintiff, when used as intended or as reasonably foreseeable to Defendant. The defect in the design allows consumers such as Plaintiff to open the lid while the unit remains pressurized, despite the appearance that all the pressure has been released from the unit, and causes an unreasonable increased risk of injury, including, but not limited to, first, second and third-degree scald burns.

31. Plaintiff in this case used her Pressure Cooker in a reasonably foreseeable manner and did so as substantially intended by Defendant.

32. The subject Pressure Cooker was not materially altered or modified after being manufactured by Defendant and before being used by Plaintiff.

33. The design defects allowing the lid to open while the unit was still pressurized directly rendered the Pressure Cookers defective and were the direct and proximate result of Defendant's negligence and failure to use reasonable care in designing, testing, manufacturing, and promoting the Pressure Cookers.

34. As a direct and proximate result of Defendant's negligent design of its Pressure Cookers, the Plaintiff in this case suffered injuries and damages described herein.

35. Despite the fact that Defendant knew or should have known that the Plaintiff and consumers like her were able to remove the lid while the Pressure Cookers were still pressurized, Defendant continued to market its Pressure Cookers to the general public (and continues to do so).

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## COUNT II
## STRICT LIABILITY - FAILURE TO WARN

36. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

37. At the time in which the Pressure Cooker was purchased, up through the time Plaintiff was injured, Defendant knew or had reason to know that its Pressure Cookers were dangerous and created an unreasonable risk of harm to consumers.

38. Defendant had a duty to exercise reasonable care to warn consumers of the dangerous conditions or the facts that made its Pressure Cookers likely to be dangerous.

39. As a direct and proximate result of Defendant's negligent failure to warn of the dangers of its Pressure Cookers, the Plaintiff in this case suffered injuries and damages described herein.

40. Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the Pressure Cookers were still pressurized, Defendant continued to market its Pressure Cookers to the general public (and continues to do so).

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## COUNT III
## NEGLIGENCE

41. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

42. Defendant has a duty of reasonable care to design, manufacture, market, and sell non-defective Pressure Cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

43. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its Pressure Cookers in that Defendant knew or should have known that said Pressure Cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

44. Defendant was negligent in the design, manufacture, advertising, warning, marketing and sale of its Pressure Cookers in that, among other things, it:

   a. Failed to use due care in designing and manufacturing the Pressure Cookers to avoid the aforementioned risks to individuals;

   b. Placed an unsafe product into the stream of commerce;

8

    c. Aggressively marketed its Pressure Cookers through social media and other advertising outlets; and

    d. Were otherwise careless or negligent.

45. Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the Pressure Cookers were still pressurized, Defendant continued to market (and continues to do so) its Pressure Cookers to the general public.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

46. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

47. Defendant expressly warranted that its Pressure Cookers were safe and effective to members of the consuming public, including Plaintiff. Moreover, Defendant expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. Specifically:

    a. "Eight built-in safety features including a cover locking system that allows pressure to build only when the cover is securely closed and prevents the cover from being opened until pressure is safely reduced."[7]

48. Members of the consuming public, including consumers such as the Plaintiff were the intended third-party beneficiaries of the warranty.

---

[7] *See,* e.g. https://www.gopresto.com/product/presto-electric-pressure-cooker-plus-02141 (last accessed November 15, 2020)

49. Defendant's Pressure Cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance the pressure has been released, making it is not safe for use by consumers.

50. Defendant breached its express warranty in one or more of the following ways:

    a. The Pressure Cookers as designed, manufactured, sold and/or supplied by the Defendant, were defectively designed and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;

    b. Defendant failed to warn and/or place adequate warnings and instructions on its Pressure Cookers;

    c. Defendant failed to adequately test its Pressure Cookers; and,

    d. Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from its Pressure Cookers.

51. The Plaintiff in this case purchased the Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

52. Plaintiff's injuries were the direct and proximate result of Defendants' breach of their express warranty.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

53. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

54. At the time Defendant marketed, distributed and sold its Pressure Cookers to the Plaintiff in this case, Defendant warranted that its Pressure Cookers were merchantable and fit for the ordinary purposes for which they were intended.

55. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

56. Defendant's Pressure Cookers were not merchantable and fit for its ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

57. Plaintiff purchased her Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that they were safe for its intended, foreseeable use of cooking.

58. Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend this Complaint to include a claim for punitive damages according to proof.

## **INJURIES & DAMAGES**

72. As a direct and proximate result of Defendant's negligence and wrongful misconduct as described herein, Plaintiff has suffered and will continue to suffer physical and emotional injuries and damages, including past, present, and future physical and emotional pain and suffering, as a result of the burn injuries she suffered from the incident.

73. As a direct and proximate result of Defendant's negligence and wrongful misconduct, Plaintiff has incurred and will continue to incur the loss of full enjoyment of life and physical disfigurement as a result of the burn injuries she suffered from the incident.

74. As a direct and proximate cause of Defendant's negligence and wrongful misconduct, Plaintiffs have and will continue to incur expenses for medical care and treatment, as well as other expenses, as a result of the burn injuries she suffered from the incident.

75. Plaintiff's damages exceed $75,000.00 as required by 28 U.S.C. § 1332(a), and Plaintiff is entitled to recover the foregoing damages from Defendant in an amount to be proven at trial.

## JURY TRIAL DEMANDED

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant for damages, including punitive damages if applicable, to which she is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

   a. judgment for Plaintiff and against Defendant;

   b. damages to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's Pressure Cookers;

   c. pre and post judgment interest at the lawful rate;

   d. a trial by jury on all issues of the case;

   e. an award of attorneys' fees; and

   f. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is

applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**JOHNSON BECKER, PLLC**

Dated: November 25, 2025

*/s/ Adam J. Kress*
Adam J. Kress, Esq.  (MN ID #0397289)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
akress@johnsonbecker.com

***Attorneys for Plaintiff***